**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman**

| | |
|---|---|
| In re: | ) |
| | ) |
| JERRY LEWIS HOFFMAN  and | ) |
| JAN MARIE HOFFMAN, | ) |
| Debtors. | ) |
| | ) |
| JERRY LEWIS HOFFMAN | )  Case No. 13-29577 HRT |
| | )  Chapter 13 |
|      Plaintiff, | ) |
| v. | ) |
| | )  Adversary No. 15-01484 |
| EDUCATIONAL CREDIT | ) |
| MANAGEMENT CORPORATION, | ) |
| | ) |
|      Defendant. | ) |
| | ) |
| | ) |
| | ) |

<u>ORDER ON MOTION  FOR SUMMARY JUDGMENT</u>

This case comes before the Court on the Motion for Summary Judgment ("Motion") filed by Defendant Educational Credit Management Corporation ("ECMC") on April 19, 2016 (docket #15) and Memorandum in Support (docket #16), the Response thereto filed by Debtor Jerry Lewis Hoffman ("Debtor") (docket #17), and the Reply in Support filed by ECMC (docket #22). The Court has reviewed the pleadings and the record and is now ready to rule.

I.  Procedural Background

Debtor and his wife filed a petition under Chapter 13 of the Bankruptcy Code on November 25, 2013, and obtained confirmation of their plan on March 12, 2014.   In February 2014, Creditor ECMC filed Proof of Claim  No. 6-1, in the amount of $39,195.35, for student loan distributions made between 1990 and 1992.  Debtor objected, asking the Court to disallow the claim and issue a declaratory judgment that the "debt is invalid and not owed by the Debtor." Because no response was filed, the Proof of Claim was disallowed on July 22, 2014 (docket #52 in case #13-29577), and as a result, ECMC has and will not share in any distributions under the confirmed plan. In the order disallowing ECMC's claim, the Court noted no determination had

been made as to the dischargeabilty of the claim, because Debtor had not initiated an adversary proceeding under 11 U.S.C. § 523(a)(8).[1]

Over a year later, on November 24, 2015, Debtor brought this adversary proceeding against ECMC.  In the complaint, Debtor stated as follows:

> Although the Bankruptcy Court disallowed Defendant's Proof of Claim, [Defendant] may try to pursue collection activity following the entry of discharge in the underlying bankruptcy, due to the nondischargeable nature of student loans. In this instance, Plaintiff did not receive the student loan distributions, nor were the funds distributed to the school or any other third party. Plaintiff received no benefit of the funds claimed by Defendant . . . . Because the debt claimed by Defendant is an invalid debt, repayment of the amount claimed would result in a hardship on Debtor and Debtor's dependents . . . .  A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain his rights and duties as to whether the Defendant may resume collections of this debt following the discharge of his Chapter 13 Bankruptcy.

In its answer,  ECMC alleged the balance of Debtor's loan was not less than $54,759.60 (based on additional loans disbursed in 1993 and 1994).  ECMC also contended Debtor's complaint failed to state a claim for relief for "undue hardship" as established by § 523(a)(8) and applicable case law.

At a scheduling conference, the parties agreed this matter is a core proceeding arising under Title 11 and is thereby authorized by 28 U.S.C. § 157(b)(2)(A).  A discovery schedule was agreed upon, and a further scheduling conference is currently set for September 13, 2016, to set a trial.

## II.  Undisputed Facts

From 1989 to 1993,  Debtor received six federal Stafford loans totaling $16,486.  Debtor admits he borrowed these funds, and they were used to pay his tuition at Keene State College in New Hampshire ("Keene"), where he attended undergraduate school from September 1989 to April 1994.  Checks from these loans were made payable to both the college and to Debtor, jointly.  (Response, Ex. 3,4,5).  Debtor acknowledges endorsing these checks and allowing them to be applied to his tuition account.  These loans were consolidated in 2002, and are evidenced by Proof of Claim #3-1 filed by the Department of Education through its agent, MOHELA (Missouri Higher Education Loan Authority).  Debtor has acknowledged this debt and not moved for MOHELA's claim to be disallowed or discharged.

---

[1]  Unless otherwise indicated, all statutory references are to Title 11 of the United States Code.

From 1990 to 1994, Debtor also applied for four federal SLS loans from Citibank totaling $17,000. These loans are evidenced by four documents entitled "Application and Promissory Note for an SLS Loan." (Ex. B-1 to B-4). Debtor signed these documents, as did a representative of Keene (in the "school certification" section). The notes are stamped by Citibank with a lender code and date received, but are not signed by a Citibank representative. Debtor admits he signed the documents, but alleges the applications were not properly processed and the funds he requested were never dispersed to him. Keene has no record of receiving the funds, and neither the school nor the lender has copies of the SLS disbursement checks.

While Citibank was the original lender, United Student Aid Funds ("USA Funds") was the original guarantor. ECMC is the current guarantor providing services to the United States Department of Education. ECMC is a student loan guaranty agency in the Federal Family Education Loan Program ("FFELP") and is governed by the Higher Education Act, 20 U.S.C. § 1070, et seq., and 34 C.F.R. 682.100, et seq. ECMC is a non-profit corporation that provides specialized guarantor services, which include accepting assignment of student loans when a borrower has filed bankruptcy or an adversary proceeding is commenced contesting the validity or enforceability of a student loan debt. (Ex. A).

In December 2005, Pioneer Credit Recovery, Inc. ("PCR"), a duly authorized representative of USA Funds, issued to Debtor a Notice Prior to Wage Withholding, pursuant to 20 U.S.C. § 1095a,[2] to collect amounts due under the SLS loans. Debtor requested an administrative wage garnishment hearing, challenging the legality and enforceability of the SLS Loans. In March 2006, a Wage Withholding Administrative Hearing (the "Administrative Hearing") was granted. The parties submitted written evidence and argument. Debtor asserted the wage garnishment was improper because: 1) no SLS Loan disbursements were ever made to him; 2) the Promissory Notes were not enforceable because the lender portion was never completed; and 3) the Notice of Loan Guaranty and Disclosure Statements pertained only to two out of four academic calendar years and were not signed by Debtor. (Ex. G., p. 2).

After consideration of the written argument and evidence submitted by the parties, on April 13, 2006, the Hearing Officer issued a "Wage Withholding Administrative Hearing Final Decision" (the "Agency Decision"), in which he concluded as follows:

> Borrower next argues that the Promissory Notes presented by Pioneer Credit Recovery, Inc. are not completed or signed by the lender and that they do not list the actual amount disbursed to Borrower or for Borrower's benefit. Borrower's argument is, in essence, that he does not remember the loans at issue being disbursed to him or for his benefit and that because the lender portion of the Promissory Note was not completed, Pioneer Credit Recovery, Inc. cannot prove that such loans were disbursed.

_____

[2] This provision authorizes a guaranty agency to withhold wages to satisfy a debt for loans made under the Higher Education Act.

In response, Pioneer Credit Recovery, Inc. relies upon several other documents to establish that the loans were in fact disbursed and remain outstanding. First, Pioneer Credit Recovery, Inc. relies upon two Notices of Loan Guaranty and Disclosure Statements. The first reflects a total indebtedness to Citibank Student Loans of $12,000.00 and the second reflects a total indebtedness to Citibank Student Loans of $17,000.00. The lender in each instance was Citibank. Pioneer Credit Recovery, Inc. also submits a Forbearance Request Form signed by Borrower on October 3, 1995 requesting the forbearance of his loan balance in the amount of  $17,073.01, an amount that corresponds to the Notice of Loan Guaranty and Disclosure Statement. Borrower's request for loan forbearance in October of 1995 of loans that were lended [sic] by Citibank Student Loans - loans that he has claimed in this hearing were not disbursed - undermines the credibility of his argument that none of the loans were disbursed.

Based upon all of the foregoing, and upon all of the documents submitted by Pioneer Credit Recovery, Inc. and by Borrower, it is my decision that Borrower has failed to prove by preponderance of the credible evidence that the loans at issue are not enforceable because they were not disbursed and/or for other reasons discussed above. While Pioneer Credit Recovery, Inc. has not produced perfect documentation, it is sufficient to establish the existence of unpaid student loan obligations. Accordingly, Borrower's request for relief from wage garnishment on the basis that the loans at issue are not enforceable is denied.

Ex. G., p. 3.

In May 2006, Debtor filed a complaint in the United States District Court for the District of Colorado seeking judicial review of the Agency Decision and a declaratory judgment that the student loan debts were not enforceable. On July 29, 2008, the complaint was dismissed without prejudice[3] and the District Court action was closed. (Ex. I, J, K).

Following dismissal of the District Court Action, Debtor's wages were the subject of several administrative wage garnishment payments on his SLS Loans, including six voluntary or involuntary payments made on: (1) August 4, 2008; (2) August 8, 2008; (3) August 18, 2008; (4) August 25, 2008; (5) September 2, 2008; and September 8, 2008. (Ex. A).

---

[3] The parties apparently had been engaged in settlement discussions but filed a status report advising they could not agree on terms or whether the case should be dismissed with or without prejudice. The District Court concluded: "[w]hile Defendants complain about Plaintiff's failure to prosecute the case, they took no action to dismiss the case during the past year or so that the case has been administratively closed. . . .  I feel that a dismissal without prejudice is the proper result in this case." (Ex. J).

When Debtor and his wife filed for bankruptcy in November 2013, they listed the following debts on Schedule E: (1) $10,842 owing to MOHELA; (2) $35,810 to Sallie Mae (for wife's student loan); and (3) four debts owing to the U.S. Department of Education in the amounts of $11,080, $9,395, $10,713, and $10,101 (totaling $52,131). These debts were all marked as disputed. After several objections were resolved, the plan was confirmed in March 2014, with Debtor to make three monthly payments of $1,355, followed by monthly payments of $1,592 for 57 months. Student loans were allowed to share in class 4 distribution upon the filing of a valid, timely, and allowed proof of claim. As noted previously, ECMC's proof of claim was disallowed for failure to file a response to Debtor's objection. Debtor then filed this adversary proceeding in November 2015.

III.  Discussion

A.  Summary Judgment

Summary judgment is appropriate when the materials submitted to the court demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989); *National Dev. Servs., Inc. v. Denbleyker (In re Denbleyker)*, 251 B.R. 891, 894 (Bankr. D. Colo. 2000). *See also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). What facts are material depends upon the substantive law applied. *Kaiser-Francis Oil Co.*, 870 F.2d at 565. Disputes about immaterial facts will not preclude summary judgment. *Id.* A trial court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented. *Anderson v. Liberty Lobby*, 477 U.S. at 255. At the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Schlup v. Delo*, 513 U.S. 298, 332 (1995).

B.  Jurisdiction

Jurisdiction over this matter is not clear from Debtor's complaint. Debtor seeks to establish that he does not owe a particular student loan debt to ECMC and styles his cause of action as one for declaratory judgment. He cites no authority under the Bankruptcy Code for the relief requested but cites to § 523(a)(8) in the Argument section of his complaint as a reason for seeking the Court's declaration. Despite the citation to § 523(a)(8), the complaint makes no allegation of undue hardship, which § 523(a)(8) requires in order to discharge a student loan debt. The Court must, therefore, determine if it may exercise jurisdiction over this dispute and the basis of its authority to determine the outcome. *See, e.g., In re Otero County Hosp. Assoc., Inc.*, 527 B.R. 719, 756 (Bankr. D. N.M. 2015) (a court has an independent duty to examine its jurisdiction) (citing *In re Digital Impact, Inc.*, 223 B.R. 1, 5 (Bankr. N.D. Okla. 1998)).

The Court looks beyond Debtor's description of his cause of action to its substance. It finds that Debtor's complaint states a cause of action that lies within 28 U.S.C. § 1334(b)'s grant of federal bankruptcy jurisdiction. Debtor seeks a declaration that he owes no debt to ECMC.

The education debt ECMC claims Debtor owes to it is, by its very nature, a debt that is nondischargeable under § 523(a)(8) absent a court finding – based on undue hardship – that the debt may be discharged.  Therefore, the essence of Debtor's cause of action is his request for a determination whether or not he owes a debt to ECMC that is nondischargeable under § 523(a)(8).  The determination of whether or not the debt exists in the first instance is a necessary issue – the foundational issue – to the ultimate determination of whether the Debtor owes ECMC a nondischargeable debt.  Thus, the Court may exercise jurisdiction under § 1334(b) over this matter because it is a matter that arises under title 11.  *In re Liburd-Chow*, 434 B.R. 863, 867 (Bankr. N.D. Ill. 2010) ("The jurisdiction of a bankruptcy judge comprises, and is limited to, matters 'arising in,' 'arising under,' or 'related to' a case under Title 11, the Bankruptcy Code. . . .  A case 'arises under' Title 11 when the action is based on a right or remedy explicitly provided in it.")[4] (citing 28 U.S.C. §§ 1334(b) & 157(a); *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995); *Conseco, Inc. v. Schwartz (In re Conseco, Inc.)*, 330 B.R. 673, 681 (Bankr. N.D. Ill. 2005)).

Plaintiff's cause of action under § 523(a)(8) is a core matter under 28 U.S.C. § 157(b)(2)(I), which gives this Court statutory authority to "hear and determine" the issues in this case.  28 U.S.C. § 157(b)(1).  Nonetheless, not all matters listed under § 157(b)(2) as "core" matters that may be adjudicated in the bankruptcy court may, under Constitutional separation of powers, be heard by a bankruptcy judge.  *See Executive Benefits Ins. Agency v. Arkison*, __ U.S. __, 134 S. Ct. 2165, 2172 (2014) ("*Stern* made clear that some claims labeled by Congress as 'core' may not be adjudicated by a bankruptcy court in the manner designated by § 157(b).") (citing *Stern v. Marshall*, __ U.S. __, 131 S. Ct. 2594 (2011)).  A dischargeability determination, however, has no analog in non-bankruptcy law and is a quintessential example of the "restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power." *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982).  Therefore, the Court has full statutory – and Constitutional – authority to hear and determine all issues in the case and enter a final judgment.

C. Burden of Proof

Generally, a creditor has the burden to show its debt is excluded from discharge. *Grogan v. Garner*, 498 U.S. 279, 287 (1991).  This is true even though Debtor is the plaintiff in this action. *In re Dudley*, 502 B.R. 259, 271 (Bankr. E.D. Va. 2013).[5]  Thus  ECMC, as a creditor, must prove, by a preponderance of the evidence, that a debt exists and the debt is the type excepted from discharge under § 523(a)(8).  *Id.* (citing  *Maas v. Northstar Educ. Fin., Inc. (In re Maas )*, 497 B.R. 863, 869 (Bankr. W. D . Mich. 2013). If the creditor meets that burden, then

---

[4] To this description of bankruptcy jurisdiction, the Court would add the "original and exclusive jurisdiction of all cases under title 11."  28 U.S.C. §§ 1334(a), 157(a).

[5] The *Dudley* court acknowledges some confusion in the case of a declaratory judgment action, where the role of plaintiff and defendant is sometimes reversed.  *See Dudley* at 271, n. 11.

the debt is only discharged if the debtor establishes that repayment of the debt would constitute undue hardship.  *Id.*

Here, the Debtor has not raised a defense of undue hardship, other than the argument that, because the debt is unenforceable, paying the debt would be an undue hardship.   This was also the case in *In re Maas*, cited above, and in *In re Rust*, 510 B.R. 562 (Bankr. E.D. Ky. 2014).  In those cases, the court noted that, because the debtor had not raised a defense of undue hardship, the only issues before the Court were whether the loans were among the types of educational loans excepted from discharge under § 523(a)(8), and whether the debtor owed the debt.  *Maas*, 497 B.R. at 868; *Rust*, 510 B.R. at 567.

D.  Are the Loans of the Type Excepted from Discharge Under  § 523(a)(8)?

Section § 523(a)(8) provides as follows:

11 U.S.C. § 523  Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

    (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for--

        (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

        (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

    (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

In a case cited by ECMC, *Pageus v. U.S. Dep't of Educ.*, 2010 WL 731590 (D. N.D. Ga. 2010), that court provided a helpful explanation of the different types of federal student loans, as follows:

After 1992, the Department of Education began using the term Federal Family Education Loan ("FFEL") as an umbrella term for four different guaranteed student loan programs: the Robert T. Stafford Federal Student Loan Program ["Stafford Loans"]; the Federal Supplemental Loans for Students Program ["SLS Loans"]; the Federal PLUS Loan Program ["PLUS Loans"]; and the Federal Consolidation Loan Program. Participating lending institutions use their own

funds to make loans to borrowers attending "eligible" postsecondary schools. These loans, in turn, are guaranteed by state agencies and are subsidized by the United States Department of Education. *See generally Morgan v. Markerdown Corp.*, 976 F.Supp. 301, 308–09 (D.N.J.1997). "Eligible institutions" are defined in 20 U.S.C. § 1085(a).

*Pageus* at *3.

In this case, Debtor admits he applied for both Stafford Loans (which he does not dispute he owes) and SLS Loans (which he does dispute). The SLS loans at issue in this case qualify under § 523(a)(8)(A)(i) because they are education loans insured by the federal government, made under a program funded in part by the federal government and in part by USA Funds, a private non-profit corporation. (Motion, Ex. R, page 4). Thus, the loans are among the types of loans excepted from discharge under this section. This case is unlike recent cases debating whether certain types of loans qualify under § 523(a)(8) as "funds received as an educational benefit, scholarship, or stipend" under § 523(a)(8)(A)(ii). *See, e.g., In re Christoff*, 527 B.R. 624 (9th Cir. BAP 2015).

Since it is undisputed that the loans at issue in this case are of the type nondischargeable under § 523(a)(8)(A)(i), and because the Debtor makes no argument going to the issue of undue hardship, the only remaining issue for this Court to decide is whether Debtor owes the debt.

E.  Does the Debtor Owe the Debt?

Debtor argues he does not owe the debt to ECMC because he does not recall the student loan disbursements being made to him, or for his benefit. He also claims the lender failed to properly execute the loan documents and to provide proper documentation of the disbursements. In an affidavit attached as Exhibit 1 to his Response, Debtor asserts as follows:

For all times present, once a semester (twice a year), I would go to the college's Bursar's office to endorse a joint check made out to me and Keene State College. These checks were my Stafford Subsidized Loan disbursements. The checks I endorsed never exceeded $1,500.00 for the years 1989 to 1993. In 1993 and 1994 my subsidized loan increased to $5,500 for that year, so I endorsed two checks that year for $2,250.00.[6] I did not receive any checks in the mail from Keene State or any other bank during my attendance. Any account overage payment was disbursed by the Keene State Bursar office and I had to go in person to pick-up the check. During my attendance at Keene State, I never received an overage check for more than $200. From 1989-1992 I worked CNS Grocery in Battleboro, VT. I worked full-time earning about $13.00 per hour. From 1992 to 1993 I worked in Keene State book store earning $10.00 per hour. In 1994, my

---

[6] Debtor does not explain this apparent mathematical error.

last semester, I worked at CNS Grocery part time earning about $13.00 per hour. A $2000.00 check, or even a $1000.00 check would have stood out, would have made so I could work less while attending school.  I contacted Keene State University in 2000, after the first contact I received from Pioneer Recovery, to see if they had records of payments related to the SLS Loans.  Keene State informed me that they did not have financial account records going back that far.

Response, Ex. 1.

Debtor also attaches to his Response a tuition and fee schedule for the years he attended Keene. (Ex. 2).   Debtor asserts that while attending Keene, he lived off-campus and was a New Hampshire resident for purposes of calculating tuition.  (Complaint, ¶ 11, 12, 13). The tuition and fee schedule indicates that resident tuition, per semester, ranged from $1,020 in 1990 to $1,290 in 1994. Other mandatory fees, per semester, ranged from $185 in 1990 to $427 in 1994. Debtor asserts the Stafford loans alone, plus a "small grant" from Keene of between $200 and $300 per semester, would have covered all tuition and fees.

The tuition and fee schedule also contains amounts for room and board.  As Debtor asserts he lived off campus, he does not include these amounts in his college attendance costs. The Court notes, however, that on page 11 of Exhibit 2, the schedule indicates that apartment rentals in the area ranged from $503 to $560 monthly ($6,036 to $6,720 yearly), depending on location.  Debtor's Stafford loan application (Ex. 4) indicates a "family AGI" of $12,198 in May 1991.

ECMC alleges the loans are valid and are supported by ample evidence, as well as the prior Agency Decision.  In support, ECMC attaches 18 exhibits to its Motion, including: (1) the Applications and Promissory Notes signed by Debtor from 1990 to 1993,  (Ex. B-1 to B-4); (2) an affidavit signed by a custodian of ECMC's records ("Skerbinc Affidavit," Ex. A); (3) servicing records for the loans (Ex. C1-C4); (4) assignment letters for the loans (Ex. E, F); (5) Notices of Loan Guaranty and Disclosure Statements mailed to Debtor's address listed on his loan applications (Ex. H); (6) a December 2008 letter from USA Funds to Senator Ken Salazar's office detailing the history of contacts with Debtor (Ex. L); (7) a November 2008 letter from the U.S. Department of Education to Senator Salazar's office detailing the history of the loans (Ex. Q); (8) forebearance and deferment requests signed by Debtor in 1995 (Ex. N, O, P); and (9) the Agency Decision, wherein the Hearing  Officer determined USA Funds had demonstrated by a preponderance of the evidence that it was entitled to withhold a portion of Debtor's wages to satisfy the loan balance (Ex. G).

In the Motion, ECMC asserts Debtor's allegations have no merit and are insufficient to raise a genuine issue of material fact for the purpose of opposing summary judgment. Specifically, ECMC makes three arguments: (1) The Agency Decision should be given preclusive effect under res judicata and/or collateral estoppel; (2) Alternatively, the Court must give deference to the Agency Decision; and (3) Alternatively, laches applies to bar Debtor's claims.

(1)  Preclusive Effect of Agency Decision.

Administrative proceedings are entitled to preclusive effect where they constitute a final agency decision. *See Astoria Federal Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991) (the Supreme Court has "long favored application of the common-law doctrines" of collateral estoppel and res judicata to "determinations of administrative bodies that have attained finality[,]" and, as such, courts have "not hesitated" to apply these doctrines where an administrative agency acts "in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate").

ECMC argues principles of res judicata and collateral estoppel preclude relitigation of Debtor's complaint.  In his response, Debtor asserts ECMC has waived those defenses, and that neither res judicata nor collateral estoppel applies.  It is unclear whether Debtor alleges ECMC waived the defenses by not asserting them in its answer in this adversary proceeding, or whether Debtor blames the waiver on the inaction of ECMC's predecessors.[7]  Either way, the Court concludes ECMC has not waived the defenses.

Under  Fed. R. Civ. P. 8(c),  "[i]n responding to a pleading, a party must affirmatively state any . . . affirmative defense, including . . . estoppel, laches, and res judicata."  However, the law in this Circuit is clear that in the absence of a showing of prejudice, an affirmative defense may be raised for the first time at summary judgment.  *Ahmad v. Furlong,* 435 F.3d 1196, 1202 (10th Cir. 2006); *See also Ball Corp. v. Xidex Corp*., 967 F.2d 1440, 1443 (10th Cir.1992) ("The purpose of . . . pleading [an affirmative defense] is to give the opposing party notice of the [defense] and a chance to argue, if he can, why the imposition of [the defense] would be inappropriate."  Here, while ECMC did not specifically list estoppel, laches, or res judicata as affirmative defenses in its answer, ECMC did "reserve the right to supplement, amend, add to, and delete any or all of these affirmative defenses based on information learned through discovery."  ECMC then fully addressed these defenses in its motion for summary judgment, filed five months before the status conference scheduled to set trial.  Thus, the Court finds Debtor is not unfairly prejudiced by ECMC's failure to plead these affirmative defenses, and ECMC has not waived them.

---

[7] Debtor states "[t]he prior court case provided ECMC's predecessors in interest the opportunity to raise the defenses of res judicata, estoppel and laches. ECMC's predecessors failed to do so."  However, Debtor admits both of ECMC's predecessors pled estoppel in their answers, which Debtor attaches to his Response as Ex. 7 and 8.

*Res judicata*

In order to apply res judicata to a prior judgment, four elements must exist: (1) the prior suit must have ended with a judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must be based on the same cause of action; and (4) the plaintiff must have had a full and fair opportunity to litigate the claim in the prior suit. *Nwosun v. General Mills Rest., Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997) (citing *Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d 683, 686 (10th Cir.1992)). The parties here agree with element (2): that the parties are identical or in privity. The parties disagree, however, on the remaining elements of res judicata.

Debtor argues the Agency Decision was not a prior suit ending with a judgment on the merits because there was no "suit" and no "judgment" rendered. Debtor also contends the administrative proceeding did not involve the same cause of action, because the focus of the proceeding was wage garnishment, rather than dischargeability. Debtor further alleges he did not have a full and fair opportunity to litigate in the administrative proceeding.

The Court finds res judicata does not apply to bar Debtor's claims against ECMC, because the administrative proceeding did not involve the same cause of action at issue before this Court. In the dischargeability context, the Supreme Court has recognized an exception to the general applicability of res judicata. In *Brown v. Felsen* 442 U.S. 127 (1979), the Supreme Court emphasized that dischargeability claims are unique and involve issues distinct from those considered in ordinary collection proceedings. *Id.* at 134–35. Under the doctrine of res judicata, a "cause of action" includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence. *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1169 (10th Cir. 2000). In the instant case, the wage garnishment hearing did not involve all legal theories applicable to the transaction between the parties; specifically, it did not include the dischargeability of the debt at issue.[8] Because the third element of res judicata does not apply, the Court will not consider the remaining elements of res judicata.

*Collateral estoppel*

In the Tenth Circuit, collateral estoppel[9] requires that four elements be met: (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior

---

[8]  In the Agency Decision, there is a brief mention of dischargeability in connection with Debtor's apparent prior bankruptcy in 1996, but ultimately that issue was not decided because prior to 1998, student loans would have been dischargeable only if they had been in repayment for a period of seven years prior to the bankruptcy. (Ex. G, p. 2).

[9]  This Court is applying the federal law of collateral estoppel because the former proceeding was one under the Wage Garnishment Act, a federal law. *See Stan Lee Media, Inc. v. Disney*, 774 F.3d 1292, 1297 (10th Cir. 2014).

action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d 683, 687 (10th Cir.1992).

As previously stated, the parties agree that element (3) is met, leaving the Court to determine whether the remaining three elements of collateral estoppel apply.  Collateral estoppel may be a basis for granting summary judgment in a dischargeability claim because of the determinations made in a prior case.  *In re Wallace*, 840 F.2d 762, 765 (10th Cir. 1988).

(a) Identical Issues

The Tenth Circuit has noted a number of factors relevant to determine whether "identical" issues have been decided, including:

> Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?  Does the new evidence or argument involve application of the same rule of law as that involved in the prior proceeding? Could pretrial preparation and discovery relating to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second? How closely related are the claims involved in the two proceedings? Where these questions may be answered in the affirmative, it is "likely that the 'issue' involved in the two proceedings is the same."

*B-S Steel of Kansas, Inc., v. Texas Indus., Inc.*, 439 F.3d 653, 663 (10th Cir. 2006) (internal citations omitted).

Here, the evidence and arguments Debtor relied on in the administrative proceeding are identical to the arguments he makes in this adversary proceeding.  In his complaint,  Debtor alleges "Citibank did not execute the Application and Promissory Note." See Complaint, ¶ 21; Response, ¶ 4. This is the same argument Debtor raised at the administrative hearing, which was rejected by the Hearing Officer.  (Ex. G, p. 3).  In both the administrative proceeding and here, Debtor alleged he did not recall receiving the SLS disbursements, or the proceeds being received for his benefit. See Ex. G,  p. 2, Complaint,  ¶¶ 23 and 29.  These are identical arguments. Additionally, the evidence presented in both proceedings is substantially the same.  The Hearing Officer relied on many of the same documents presented by ECMC as exhibits to its Motion. Ex. G., p. 2 (listing as evidence Applications and Promissory Notes, Notices of Loan Guaranty and Disclosure Statements, and Forebearance Request Form signed by Debtor on September 27, 1995).

Both the administrative proceeding and this adversary proceeding require application of the same rule of law; that is, both the Hearing Officer and this Court must decide, under federal law, whether the debt exists and is enforceable. Debtor brought this adversary proceeding for "a

judicial determination of Debtor's rights and duties, and a declaration as to his obligation on the debt." (Complaint ¶ 35). This is the same purpose of an Administrative Wage Garnishment hearing under 10 U.S.C. § 1095(a)(5): "to determine the existence or amount of the debt."

Discovery on the identical issue presented in both proceedings would, and has, produced the same evidence, and more.[10] Finally, while the claims are not the same (wage garnishment versus dischargeability), they are closely related, in that both claims necessitate a determination of the debt's validity. The Court therefore finds the first element of collateral estoppel is met in this case.

    (b) <u>Final Decision on the Merits</u>

> [F]or purposes of issue preclusion . . . , "final judgment" includes
> any prior adjudication of an issue in another action that is
> determined to be sufficiently firm to be accorded conclusive effect.

Restatement (Second) of Judgments § 13 (1982).

Debtor contends the Agency Decision is not a final decision because "the prior federal case filed by [Debtor] was dismissed without prejudice." The Court disagrees. Even though the case was dismissed without prejudice, the District Court clearly stated that both sides had failed to pursue the case for over a year. At least one court in this Circuit has held that "[w]hen the losing party at the administrative level has decided not to appeal the decision further, the administrative decision is considered final and is entitled to preclusive effect, for purposes of res judicata and collateral estoppel." *Hobbs v. Zenderman* 542 F.Supp.2d 1220, 1225 (D. N.M. 2008). While in this case, Debtor did appeal the Agency Decision, he failed to pursue it further when he agreed to a dismissal of the appeal.

The Court also rejects Debtor's argument that the Agency Decision is not the same as a final judgment rendered in a court. *In Astoria Fed. Sav. & Loan Ass'n*, 501 U.S. at 107-08, the Supreme Court reasoned as follows: "a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise. . . . The principle holds true when a court has resolved an issue, and should do so equally when the issue has been decided by an administrative agency, be it state or federal, . . . which acts in a judicial capacity." *See also B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S.Ct. 1296, 1303 (2015 )("issue preclusion is not limited to those situations in which the same issue is before two courts. Rather, where a single issue is before a court and an administrative agency, preclusion also often applies.").

---

[10] Debtor admits in his Response that ECMC "has provided more documents than any prior servicer heretofore." Response, p. 7.

The Court agrees with ECMC that, pursuant to the applicable federal statutes and regulations, the entry of a decision in an Administrative Wage Garnishment Hearing held pursuant to 20 U.S.C. § 1095(a) constitutes a final agency decision. *See, e.g.*, *Harrill v. U.S. Dep't of Educ.*, 2009 WL 230126 at *6 (S.D. Ohio Jan. 30, 2009) (federal courts have treated wage garnishment hearings as final agency decisions); *Kobach v. U.S. Election Assistance Comm'n*, 772 F. 3d 1183, 1189 (10th Cir. 2014) (to be final, agency action must mark the consummation of the agency's decisionmaking process, and must either determine rights or obligations or occasion legal consequences).

Moreover, the determination by USA Funds, that the Debtor owes the student loan debt, which was part of the wage garnishment hearing, is no longer subject to judicial review under the Administrative Procedures Act ("APA"). The decision was rendered on April 13, 2006. Debtor filed an action for review of that decision in the District Court on May 12, 2006. That action was ultimately dismissed without prejudice on July 29, 2008. Actions for judicial review of agency actions under the APA may not be commenced after six years from the date of the agency action. 28 U.S.C. § 2401(a); *Wind River Min. Corp. v. U.S.*, 946 F.2d 710, 713 (9th Cir. 1991). Debtor is long past the six years within which he could have pursued review of the agency action in the district court.

The Court concludes, under the standards discussed in the Restatement, the agency determination that the Debtor owes the student loan debt at issue is final for the purposes of applying collateral estoppel.

(c)  Full and Fair Opportunity to Litigate

Debtor argues he was not afforded the opportunity to fully litigate his claim in the agency action. Specifically, Debtor notes the agency hearing was based only on written submitted evidence, with no opportunity for testimony or cross-examination. Debtor cites *Reed v. Amax Coal Co.*, 971 F. 2d 1295, 1301 (7th Cir. 1992), where the Seventh Circuit held:

An agency acts in a judicial capacity when it provides the following safeguards: (1) representation by counsel, (2) pretrial discovery, (3) the opportunity to present memoranda of law, (4) examinations and cross-examinations at the hearing, (5) the opportunity to introduce exhibits, (6) the chance to object to evidence at the hearing, and (7) final findings of fact and conclusions of law.

*Reed v. Amax* was an employment discrimination case. Due process is a flexible concept, and the particular application of due process varies as the factual situation demands. *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976). In assuring adequate protection, a court must consider the private interests affected, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and the state's interest. *Id.* at 335.

In *Pageus*, 2010 WL 731590, the court examined due process in cases similar to the instant case.  The Court there noted as follows:

> The essential elements of due process are notice and an opportunity to respond. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Due process does not require that the Department of Education provide Plaintiff with an oral hearing. *See Califano v. Yamasaki*, 442 U.S. 682 (1979) (under certain circumstances agency's written review of records sufficient for due process purposes); *Harter v. Paige*, 130 Fed. Appx. 69, 70 (8th Cir.2005) (Department of Education written records hearing satisfied due process); *George W. v. U.S. Dep't of Educ.*, 149 F.Supp.2d 1195, 1204 (E.D.Cal.2000) (Due process requires notice and an opportunity to be heard, but it does not automatically require a formal hearing).

*Id.* at *5.

In *Harter v. Paige*, 130 Fed. Appx at 71, a case involving similar facts, the Eighth Circuit concluded "Harter's Fifth Amendment claim fails because the Department's written records hearing satisfies the due process requirement that the Department provide defaulted student loan debtors a meaningful opportunity to present objections before implementing the garnishment. Harter has failed to produce any evidence supporting her allegation that the Department's hearing was inadequate."

The Court agrees with ECMC that the Administrative Wage Garnishment hearing provided sufficient due process safeguards.  Debtor received notice of the wage garnishment, was given the opportunity to inspect agency records, was represented by counsel, and had the opportunity to present his own letter, two letters from counsel, and 22 exhibits to the Hearing Officer.  Debtor was also given a chance to object to the opposing evidence (Reply, page 6).

In light of all the foregoing, the Court concludes all elements of collateral estoppel have been met, and Debtor's claims in this adversary proceeding are barred by collateral estoppel. Because the Court agrees with ECMC's argument on this issue, it does not need to address ECMC's arguments as to agency deference or laches.

IV.  Other Arguments Raised by Debtor

While the Court has determined collateral estoppel bars Debtor's action as a matter of law, the Court also finds, alternatively, that Debtor has not raised a genuine issue as to any material fact, and ECMC is entitled to judgment as a matter of law.

In its Reply, ECMC primarily argues that Debtor's Response does not allege sufficient genuine, material, disputed facts to defeat its motion for summary judgment.   Specifically, in his Response,  Debtor states five "possibilities" exist as to what happened in this case:

A) Citibank did not disburse the loan funds.
B) Keene did not receive the disbursed funds.
C) Keene received the funds and paid the funds to Plaintiff;
D) Keene received the funds and applied the funds to an outstanding balance due on plaintiff's account.
E) Keene received the funds but misapplied the funds; or
F) Keene returned the funds to Citibank.

Debtor "takes issue" with possibility (C) and (D), because he did not receive funds from Keene, and "Citibank funds were not needed to pay any outstanding tuition or fees owed to Keene."

Response, p. 2.

In considering a motion for summary judgment, the Court must follow the well-settled law that "the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87(1986). "[M]ere  conclusory allegations, speculation or conjecture" will not provide a sufficient basis for a non-moving party to resist summary judgment." *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir.1996).

The Court finds the "possibilities" raised by Debtor are insufficient to defeat summary judgment.  A court may not consider conclusory allegations lacking supportive evidence, legal conclusions, self-serving statements without actual support in the record, opinions, or speculation.  *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1992); *Alludo v. Denver Area Council*, 2008 WL 2782734, at *1 (D. Colo. 2008).   Debtor's self-serving statements lack support in the evidentiary record, which clearly shows Debtor continued to sign applications and promissory notes for SLS loans, year after year, even though he allegedly did not receive loan funds from any of the notes.  Further, this allegation directly contradicts evidence that was before both the Hearing Officer and this Court.

Specifically, on the Note Debtor signed on August 16, 1991, Debtor acknowledged receiving an SLS loan during the 1990-1991 school year ( Ex. B-2 Section 9C). Additionally, Section 9D of Ex. B-3 provides: "Enter the total unpaid balance you owe on any of your prior PLUS/SLS Loans, or any portion of these loans included in your Consolidation Loan for this student."  In this section, Debtor listed "$8,000." Ex. B-3 was signed by Debtor on April 20, 1992.  Thus, on that date he acknowledged he "owed" $8,000 in SLS Loans.[11]   The Debtor's

---

[11]  No PLUS loans are at issue in this case.

continuing claims and beliefs are inconsistent with Debtor's behavior in making these acknowledgments and continuing to apply for SLS Loans, if he had not received the funds.

At summary judgment, the Court's inquiry is not whether the parties dispute possible facts, but instead whether the evidence establishes a genuine issue of material fact. *See Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 486 (10th Cir. 1995). In this case, the Court concludes the evidence does not.

V.  Conclusion

After a detailed and thorough review of the entire record in this case, and viewing the evidence in a light most favorable to Debtor, the Court concludes Debtor's claims are barred by collateral estoppel, there is no genuine issue as to any material fact, and ECMC is entitled to judgment as a matter of law.

Accordingly, it is HEREBY ORDERED:

1) ECMC's Motion for Summary Judgment is GRANTED.  Judgment will enter by separate order.

2) The status conference currently scheduled for September 13, 2016, is VACATED.

Dated this 7th day of September,  2016.

**BY THE COURT:**

_Howard Tallman_
_____

Howard R. Tallman, Judge
United States Bankruptcy Court

Page 17 of 17